**William J. HOGAN, Plaintiff,**

v.

**50 SUTTON PLACE SOUTH OWNERS, INC., Gumley–Haft, Inc., Manning Raab, Dealy & Sturm, Office of the Contract Arbitrator, Realty Advisory Board, Union Local 32B–32J, Defendants.**

**No. 94 Civ. 5700 (JGK).**

United States District Court,
S.D. New York.

March 29, 1996.

William J. Hogan, Astoria, NY, pro se.

Howard Rothschild, Realty Advisory Board on Labor Relations, Inc., James E. McGrath, III, Gumley–Haft, Inc., Putney, Twombly, Hall & Hirson, Ronald A. Goldman, Local 23–B, Service Employees International Union, Manning, Raab, Dealy & Sturm, New York City, for defendants.

## OPINION AND ORDER

KOELTL, District Judge:

The plaintiff William J. Hogan ("Hogan") alleges in the Amended Complaint that he was wrongfully discharged from his position as a doorman at 50 Sutton Place South, (Amended Complaint ¶¶ 29, 40), in violation of §§ 703 and 704(2) of the New York Labor Law and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5 *et seq.* The Amended Complaint also alleges that his un-ion, Local 32B–32J of the Service Employees International Union (the "Union"), breached its duty of fair representation in handling Hogan's arbitration regarding his termination, and seeks vacatur of the arbitrator's award upholding his discharge. The Complaint names as defendants the Union, his former employer, the Union's law firm, and others involved in the arbitration process. While the Amended Complaint asserts all claims against all defendants in general, defendants contend and Hogan does not dispute that each claim should apply only to certain defendants.

Hogan now moves for summary judgment. All defendants cross-move for summary judgment. For the reasons set forth below, Hogan's motion is denied and the defendants' cross-motions are granted.

## I.

Based upon all the papers, there is no genuine issue with respect to the following facts. Hogan was suspended from his position as a doorman on June 7, 1991, allegedly as a result of excessive absenteeism. (Galligan Aff. ¶ 10). Subsequently Hogan filed a complaint with the Union. The Union then contacted Gumley–Haft, Inc., the company that managed the property at 50 Sutton Place South, and requested an adjustment of Hogan's discipline. Gumley–Haft refused to adjust the complaint. As a result, in June, 1991, the Union, on Hogan's behalf, requested an arbitration to determine the propriety of Hogan's suspension. (Galligan Aff. ¶ 10).

On October 21, 1991, Gumley–Haft terminated Hogan allegedly because of his poor attendance record. (Amended Complaint ¶ 29). Shortly thereafter, Hogan filed a second complaint with the Union alleging that he was the victim of discrimination based on his race and religion and that the defendants blacklisted him in a conspiracy to terminate his employment. (Galligan Aff. ¶ 11); (Amended Complaint ¶¶ 43–47); (Amended Complaint, Section II, ¶¶ 1–13). Although the Union sought to have Hogan reinstated, Gumley–Haft refused. In response, the Union sent Gumley–Haft a demand for an arbitration on October 29, 1991 in accordance with the Collective Bargaining Agreement

between the Union and the plaintiff's employer. Step II grievance meetings were held on March 4, 1992 and May 21, 1992 pursuant to the Collective Bargaining Agreement. (Galligan Aff. ¶ 14). The meetings did not result in a settlement between the Union and Gumley–Haft.

The Union then arranged for Paul Galligan ("Galligan") to represent Hogan at the arbitration. (Galligan Aff. ¶ 16). Galligan is an attorney with Manning, Raab, Dealy & Sturm, a law firm employed by the Union. Galligan met with Hogan before the arbitration and discussed his poor attendance record and Hogan's "blacklist" and conspiracy theories. During this meeting, Galligan informed Hogan that he felt it was best only to assert that he was wrongfully terminated for his attendance record because he had bona fide excuses for his absences. (Galligan Aff. ¶ 17). Galligan suggested that Hogan should not present his conspiracy or blacklist theories because the best chance of prevailing in the arbitration would be to establish that Hogan's poor attendance record had been the result of a series of bona fide physical ailments together with severe family problems. (Galligan Aff. ¶ 17).

At the arbitration held in March, 1994, Galligan presented evidence that Hogan's absences were approved by his supervisor and were justified by bona fide reasons, including physical illness and severe family problems. (Galligan Aff. ¶ 19). Galligan cross-examined Gumley–Haft's witnesses during the arbitration. (Galligan Aff. ¶ 18). In addition, during Hogan's cross-examination he asserted that he was the victim of a conspiracy. (Galligan Aff. ¶ 19).

On March 28, 1994, the arbitrator rejected the Union's grievance and upheld Gumley–Haft's suspension and discharge of Hogan. (Galligan Aff. ¶ 20); (Amended Complaint, Opening Statement, ¶ 6(d)).

## II.

■ Summary judgment is appropriate if in light of the evidence presented, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511,

91 L.Ed.2d 202 (1986). If no rational juror could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper. *Id.*

■ If the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The nonmoving party must set forth specific facts showing that there is a genuine issue for trial. The nonmoving party may not rest upon the mere allegations or denials of the moving party's pleadings. *Anderson*, 477 U.S. at 248–49, 106 S.Ct. at 2510–11. Speculative and conclusory allegations are insufficient to meet this burden. *Allen v. Coughlin*, 64 F.3d 77, 80 (2d Cir.1995); *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985). Moreover, if the material fact at issue is intent, motivation and state of mind, summary judgment should be used sparingly. *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988). A plaintiff, however, must set forth facts from which a reasonable juror could find in his favor.

■ In addition, because Hogan is proceeding pro se, the court will liberally construe his pleadings. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972); *Pino v. Ryan*, 49 F.3d 51, 52 (2d Cir.1995).

## III.

The first claim Hogan asserts is that the Union breached its duty of fair representation by not presenting Hogan's blacklist and conspiracy theories at the arbitration. The Supreme Court, however, has held that a union breaches its statutory duty of fair representation only if the union's conduct toward a member is arbitrary, discriminatory, or in bad faith. *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916–17, 17 L.Ed.2d 842 (1967). The Court in *Vaca* considered whether a union's refusal to take a member's grievance to arbitration constituted a breach

of the Union's duty of fair representation. *Id.* at 173, 87 S.Ct. at 907–08. The Court held that a union member does not have an absolute right to have his grievance taken to arbitration. In *Vaca*, the Court found that the plaintiff did not prove arbitrary or bad faith conduct by the union in processing the member's grievance because the Union, after investigation, reasonably concluded that it could not establish a wrongful discharge and consequently decided not to take the plaintiff's grievance to arbitration. *Id.* at 191–192, 87 S.Ct. at 917–18. Accordingly, the Union did not breach its duty of fair representation.

■ The Supreme Court has also held that a union member may prove that his Union violated its duty of fair representation with substantial evidence of fraud, deceitful action or dishonest conduct on the part of the union. *Motor Coach Employees v. Lockridge,* 403 U.S. 274, 299, 91 S.Ct. 1909, 1924, 29 L.Ed.2d 473 (1971), *reh'g denied,* 404 U.S. 874, 92 S.Ct. 24, 30 L.Ed.2d 120 (1971). Union members cannot expect, however, that their Union's conduct during the grievance and arbitration process will be error-free. *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 571, 96 S.Ct. 1048, 1059–60, 47 L.Ed.2d 231 (1976). As a result, mere proof of an error in judgment is insufficient to sustain a member's burden of showing that his union breached its duty of fair representation. *Id.; Giordano v. Local 804, Int'l Bhd. of Teamsters,* 634 F.Supp. 953, 956 (S.D.N.Y.1986).

■ The lengthy Amended Complaint is devoid of factual allegations from which a reasonable jury could conclude that the Union's actions were arbitrary, discriminatory, fraudulent, or in bad faith. Moreover, nothing in the materials submitted in connection with the motion for summary judgment supports such a conclusion. Indeed, the evidence shows that the Union actually handled Hogan's case reasonably.

After Hogan filed complaints with the Union regarding his suspension and discharge, on two occasions the Union requested that Gumley–Haft adjust his discipline. The Union also requested an arbitration to determine the propriety of both Hogan's suspension and termination. After Step II

grievance meetings failed to result in a settlement between the parties, the Union provided an attorney, Paul Galligan, to represent Hogan at his arbitration hearings with Gumley–Haft.

Galligan's actions on behalf of the Union during the course of his representation of Hogan were also reasonable. Galligan met with Hogan and discussed his case with him before the arbitration. Following his meeting with Hogan, Galligan reasonably decided against advancing Hogan's conspiracy and blacklist theories at the arbitration on the basis that they did not advance any significant purpose because the basis for Hogan's discharge was poor attendance. Galligan decided, reasonably, that the most effective means to rebut the case against Hogan was to introduce evidence proving Hogan's absences were the result of bona fide illnesses and severe family problems. Moreover, Galligan reasonably chose not to pursue Hogan's complaint that he was blacklisted or the victim of a conspiracy because Hogan could not provide Galligan with any facts to prove such a claim. Consequently, Galligan's actions bear no resemblance to arbitrary or discriminatory conduct, or fraud or bad faith. Even if Galligan erred in not presenting these theories, which based on the extensive materials submitted in connection with these motions does not appear to be the case, Hogan does not state a claim because the Supreme Court has explicitly held that a Union member is not entitled to representation that is completely error free. *See Hines,* 424 U.S. at 571, 96 S.Ct. at 1059–60.

■ Moreover, even if Hogan had established a breach of the duty of fair representation, he still could not recover unless he also demonstrated that the breach caused the erroneous outcome of the grievance. In *Phillips v. Lenox Hill Hospital,* 673 F.Supp. 1207 (S.D.N.Y.1987), the court found that for a plaintiff to prove causation, the plaintiff must provide the court with evidence to establish that had the evidence been presented during the arbitration, the outcome of the arbitration would have been different. *Id.* at 1214 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Ho-

gan has not alleged that any evidence exists that would have altered the arbitrator's outcome, had it been presented at the arbitration.[1] Accordingly, Hogan's motion for summary judgment against the Union for a breach of its duty of fair representation is denied, and the Union's cross-motion for summary judgment and dismissal of Hogan's complaint is granted.

### IV.

Hogan's second cause of action appears to rest on New York State Labor Law § 704(2) which provides that it shall be an unfair labor practice for an employer to: "prepare, maintain, distribute or circulate any blacklist of individuals for the purpose of preventing any of such individuals from obtaining or retaining employment because of the exercise by such individuals of any of their rights guaranteed by section seven hundred three."

Hogan has failed to state a claim under § 704 because the New York State Employment Relations Board maintains exclusive jurisdiction to adjudicate unfair practices under Article 20 of the New York Labor Law. *See Neuman v. Namposa Realty Corp.,* 119 N.Y.S.2d 835, 841 (S.Ct. Westchester Co. 1953); *Davis v. Hogan,* 273 A.D. 745, 79 N.Y.S.2d 331, 335 (1st Dep't 1948). Because Hogan has not filed a claim with the New York State Employment Relations Board, the court does not have proper jurisdiction over the claim.

Even if the court had jurisdiction over the § 704 claim, the document referred to by Hogan does not constitute a blacklist within the meaning of § 704(2). The alleged blacklist is merely a memorandum from the Coop's superintendent, Victor Nazario, to Stephen Andron, an employee of its management company Gumley–Haft. (Amended Complaint Exh. 24). The document discussed the history of problems with the plaintiff and another employee. Hogan has offered no evidence that this document was circulated to other employers for the purpose of preventing him from attaining other employment. Moreover, to establish an unfair practice charge under § 704(2), Hogan must prove he was blacklisted because he exercised a protected right under § 703, such as the right to form, join or assist labor organizations. Nowhere in his complaint does Hogan even allege that he was engaged in activity that could trigger the protection of §§ 703 and 704(2). Accordingly, Hogan's motion for summary judgment under §§ 703 and 704(2) of the New York State Labor Law is denied, and the defendants' cross-motions are granted.

### V.

Hogan also alleges that the defendants violated New York Labor Law § 740 (the "Whistleblower Law"). To maintain an action under the Whistleblower Law, an employee must allege that an employer took retaliatory action against the employee because: (1) the employee threatened to disclose that his employer violated a law, rule or regulation and the alleged violation creates and presents a substantial and specific danger to the public health or safety, (2) the employee provided information to an investigating public body regarding such an allegation, or (3) the employee objected to participating in the alleged violation. New York Labor Law § 740(2).

Even if the factual allegations asserted by Hogan are assumed to be true, he has failed to state a claim under the Whistleblower Law. The complaint is devoid of any allegation that Hogan was dismissed because he disclosed information pertaining to Gumley–Haft's actions that would amount to a violation of law or present any danger to the public health or safety. Moreover, Hogan does not assert that Gumley Haft discharged him because he provided information to an investigating public body or refused to participate in any unlawful activity. Accordingly, defendants' cross-motion to dismiss Hogan's claim under § 740 is also granted.

---

1. Hogan actually presented his "blacklist" and conspiracy theories to the arbitrator during cross-examination.

## VI.

Hogan also appears to seek vacatur of the arbitrator's decision. The Supreme Court has held that an arbitrator's award is subject to limited review. *United Steelworkers of Am. v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960). The Court reasoned that the federal policy of settling labor disputes by arbitration would be undermined if courts could ultimately evaluate the merits of the award. *Id.* Arbitration is an indispensable process in a continuous collective bargaining process because the process allows disputes to be settled at the "plant-level" by individuals who are knowledgeable about the custom and practices of a particular industry as reflected in certain agreements. *Id.*

Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, grants federal courts jurisdiction over actions involving labor contract violations. An attempt to vacate an arbitrator's award falls within the statute and is governed by federal law.[2] *Harry Hoffman Printing, Inc. v. Graphic Communications, Int'l Union*, 912 F.2d 608, 612 (2d Cir.1990); *Katir v. Columbia Univ.*, 821 F.Supp. 900, 901 (S.D.N.Y.1993). While § 301 empowers district courts to set aside arbitration awards, federal courts have often looked to 9 U.S.C. § 10 ("the Arbitration Act") for guidance in deciding labor arbitration cases. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 40 & n. 9, 108 S.Ct. 364, 372 & n. 9, 98 L.Ed.2d 286 (1987).

If an arbitrator exceeded his powers or so imperfectly executed them a court may vacate an award. 9 U.S.C. § 10(a)(5); *Steelworkers*, 363 U.S. at 597, 80 S.Ct. at 1361; *Harry Hoffman Printing v. Graphic Communications Int'l Union*, 950 F.2d 95, 98 (2d Cir.1991); *In re Marine Pollution Serv.*, 857 F.2d 91, 94 (2d Cir.1988). However, " 'as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.' " *Leed*

Architectural *Prods., Inc. v. United Steelworkers of Am.*, 916 F.2d 63, 65 (2d Cir.1990) (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38, 108 S.Ct. 364, 371, 98 L.Ed.2d 286 (1987)).

Hogan has failed to assert any facts that support the inference that the arbitrator's decision did not comport with the essence of the collective bargaining agreement. The collective bargaining agreement provided that employees may be discharged for just cause. An arbitrator could have reasonably determined that terminating Hogan on the basis of his excessive absences was just cause. Article XII, § 1 of the collective bargaining agreement provided that Union members were allowed ten sick days per year. Hogan exceeded this limit in 1989 by three days and in 1990 by four days. In 1991, Hogan had exceeded the limit by nine days by October of that year. (Amended Complaint, Exh. 24). An arbitrator could have reasonably determined that Hogan's excessive absences, in light of the collective bargaining agreement, amounted to just cause for dismissal.

A court may also vacate an arbitration award if the decision was procured by corruption or fraud, or if the arbitrator was not impartial or was guilty of misconduct in refusing to hear material evidence. The complaint is devoid of evidence that could possibly be construed as supporting the claim that the arbitrator was guilty of misconduct or was not impartial. In fact, the arbitrator was selected from a list of arbitrators found in Article VI, § 8 of the Collective Bargaining Agreement to which both the Union and Gumley–Haft agreed. In addition, Hogan has not asserted that any evidence exists that would prove that the award was procured by corruption, fraud, or undue means.

Finally, Hogan lacks standing to seek vacatur of the arbitrator's award. Only when a union breaches its duty of fair representation, which has not occurred in this case, may an employee "step into the shoes

---

**2.** Federal law should apply even though Hogan's complaint refers to New York CPLR § 7511, the corresponding state law that provides for vacatur of an arbitrator's award. Even if § 7511 ap-

plied, Hogan has not alleged sufficient facts, if assumed to be true, that would justify vacating the arbitration award.

of the Union." *Lofton v. United States Postal Serv.,* 592 F.Supp. 36, 37, 39 (S.D.N.Y. 1984). Article V, § 4 of the collective bargaining agreement explicitly provides that "All union claims are brought by the Union alone and no individual shall have the right to compromise or settle any claim without the written permission of the Union." Thus, Hogan lacks standing to assert a claim to vacate the arbitrator's award. Accordingly, the defendants' motion to dismiss Hogan's request to vacate the arbitrator's award is granted.

### VII.

Hogan's final allegation was that he was discharged because of his religion or ethnicity, in violation of Title VII. 42 U.S.C. § 2000e–5 *et seq.* Hogan does not allege that he filed a claim of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") or the New York State Division of Human Rights, and the defendants allege without contradiction that Hogan did not. In New York, a plaintiff must file an employment discrimination claim first with the EEOC and the New York State Division of Human Rights before pursuing a claim under Title VII. 42 U.S.C. § 2000e–5(e); *Gomes v. Avco Corp.,* 964 F.2d 1330, 1332–33 (2d Cir.1992); *Kirkland v. Bianco,* 595 F.Supp. 797, 799 (S.D.N.Y.1984). Plaintiffs must also receive a right-to-sue letter from the EEOC to proceed with a Title VII claim in federal court. 42 U.S.C. § 2000e–5(f)(1); *Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 149, 104 S.Ct. 1723, 1724–25, 80 L.Ed.2d 196 (1983).

While filing with the EEOC or the state agency is not a jurisdictional prerequisite, timely filing is a "requirement that, like the statue of limitations, is subject to waiver, estoppel and equitable tolling." *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982); *Kirkland v. Bianco,* 595 F.Supp. at 798–99 & n. 2; *Hladki v. Jeffrey's Consol. Ltd.,* 652 F.Supp. 388, 392 (E.D.N.Y.1987). *Zipes* does not stand for the proposition, however, that a plaintiff bringing a Title VII claim need not comply with the provision's requirements. *Baldwin County Welcome*

*Ctr.,* 466 U.S. at 152 n. 6, 104 S.Ct. at 1726 n. 6. In the absence of such a requirement, a plaintiff could circumvent Congress' administrative scheme which was created to facilitate efficient processing of Title VII claims. *Moche v. City Univ. of New York,* 781 F.Supp. 160, 167 (E.D.N.Y.1992) (citing *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 44, 94 S.Ct. 1011, 1017–18, 39 L.Ed.2d 147 (1974)). Consequently, courts within this Circuit have been "reluctant to hear claims that were not originally filed with the EEOC." *See, e.g., Moche,* 781 F.Supp. at 167; *Dennis v. Pan Am. World Airways, Inc.,* 746 F.Supp. 288, 290 (E.D.N.Y.1990); *Littman v. Firestone Tire & Rubber Co.,* 709 F.Supp. 461, 464 (S.D.N.Y.1989); *McPartland v. American Broadcasting Cos.,* 623 F.Supp. 1334, 1339 (S.D.N.Y.1985). Without providing reasons that would trigger equitable modification of the statutory requirement to file a claim with the EEOC and obtain a right-to-sue letter from the EEOC, a plaintiff cannot state a Title VII claim in federal court unless the plaintiff has filed a claim with the EEOC.

Hogan has not filed a claim with the EEOC, nor received a right-to-sue letter from the EEOC, nor has he alleged that he is entitled to equitable modification of these requirements or presented any facts that could justify such a modification. Accordingly, Hogan's claim under Title VII is dismissed.

### CONCLUSION

The plaintiff's motion for summary judgment is denied. The defendants' cross-motions for summary judgment are granted. The clerk is directed to enter judgment dismissing the complaint and closing this case.

**SO ORDERED.**