Haffese ALI, Plaintiff,

v.

The BANK OF NEW YORK, Defendant.

No. 95 Civ. 0191 (JGK).

United States District Court,
S.D. New York.

July 24, 1996.

Haffese Ali, pro se.

Kenneth Kirschner, Eric G. Kussoy, Kelley Drye & Warren, New York City, for Defendant.

## OPINION AND ORDER

KOELTL, District Judge:

The plaintiff Haffese Ali, who appears *pro se,* is a former employee of the defendant The Bank of New York (the "Bank"). Ali alleges that the Bank discriminated against him on the basis of his race, color, and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5 *et seq.,* and the New York Human Rights Law. The defendant moves to dismiss this action pursuant to Fed.R.Civ.P. 12(b)(6) or in the alternative pursuant to Fed.R.Civ.P. 56. For the reasons that follow, the defendant's motion is granted.

## I.

The plaintiff was born and raised in Berbice, Guyana, located in South America. (Ali Dep. at 83; Def.'s 3(g) ¶ 1.) Ali attended elementary and secondary school in Guyana, and graduated from high school in 1965. (Ali Dep. at 84; Def.'s 3(g) ¶ 2.) Ali never obtained a college decree. (Ali Dep. at 207.) In March 1969, Ali left Guyana for the United States. (Ali Dep. at 84; Def.'s 3(g) ¶ 4.) Upon his arrival in the United States, Ali held several positions with various companies, most of which involved packing and shipping boxes. (Ali Dep. at 88, 95–99; Def.'s 3(g) ¶¶ 5–7, 10–12.) From November 1971 to November 1973, Ali served in the United States Army. (Ali Dep. 15–17, 99; Def.'s 3(g) ¶ 13–14.)

In 1978, Irving Trust Bank ("Irving Trust") hired Ali as a computer operator at an annual salary of $13,156. (Def.'s 3(g) at 18, 23–24; Parker Aff. ¶ 4.) Ali's duties as a computer operator included operating the computer system, running computer jobs, typing in commands, replying to commands, and mounting tapes. (Ali Dep. at 113.) Ali's supervisor was Robert Drescher. (Ali Dep. at 112–13; Def.'s 3(g) ¶ 26.)

In 1979, at the beginning of Ali's second year of employment at Irving Trust, Ali was promoted to the position of senior operator. (Ali Dep. at 116, 119; Def.'s 3(g) ¶ 29.) As senior operator, Ali received four salary increases, raising his salary to $22,126. (Ali Dep. at 123; Def.'s 3(g) ¶ 30, 32, 34, 35; Parker Aff. ¶ 5–8.)

In October 1982, Drescher wrote a memorandum to the Irving Trust Personnel Department recommending Ali for a promotion to the position of master terminal operator (MTO). (Ali Dep. at 125; Def.'s 3(g) ¶ 36; Def.'s Exh. 12.) Ali was promoted to this position in November 1982, and his salary was increased to $25,355 per year. (Ali Dep. at 124; Def.'s 3(g) ¶ 37–38; Parker Aff. ¶ 9.) As an MTO, Ali continued to report to Drescher, and his job duties included monitoring the on-line system, dealing with system users, and acting as a troubleshooter for any on-line problems. (Ali Dep. at 126; Def.'s 3(g) ¶ 44.)

Ali alleges that when he was promoted to his position as an MTO, he had sought a promotion to a technician support position. (Ali Dep. at 75–77; Def.'s 3(g) ¶ 39; Parker Aff. ¶ 10.) There is no evidence, however, that Ali ever submitted an application for this position. (Ali Dep. at 126; Def.'s 3(g) ¶ 40.) Ali has not filed a charge of discrimination with the EEOC, the New York State Division on Human Rights, or the New York City Commission on Human Rights against Irving Trust alleging that he was unlawfully denied the technician support position. (Ali Dep. at 73, 77–78; Def.'s 3(g) ¶ 41.)

As of June 1, 1984, Ali's annual salary was increased to $31,215. (Ali Dep. 128; Def.'s 3(g) ¶ 45; Parker Aff. ¶ 10.) In November 1984, Ali was promoted to the position of lead operator, and his salary was increased to $34,444 per year. (Ali Dep. 128–30; Def.'s 3(g) ¶ 47–48; Parker Aff. ¶ 10.) Ali's duties as lead operator included overall responsibility for the operating systems and recognizing and reporting problems that occurred during his shift. (Ali Dep. 129; Def.'s 3(g) ¶ 50.) Ali also completed IBM service request forms and "turn over" reports that documented any problems involving the computer systems. (Ali Dep. 129; Def.'s 3(g) ¶ 50.) Between 1984 and 1987, Ali received annual salary increases, raising his salary from $34,444 in 1984 to $40,424 in 1987. (Ali Dep. 131; Def.'s 3(g) ¶ 51; Parker Aff. ¶ 12.)

In September 1987, Ali became a DOS technician and worked the night shift. (Ali Dep. at 136, 138, 140, 208; Def.'s 3(g) ¶ 53.) Dennis McGuire supervised Ali in this new position. (Ali Dep. at 137.) In March 1988, Ali received a raise to $43,414 per year. (Ali Dep. at 137; Def.'s 3(g) ¶ 55; Parker Aff. ¶ 13.)

In 1988, the Bank acquired control of Irving Bank Corporation, the parent company of Irving Trust Company. (Def.'s 3(g) ¶ 56; Petrock Aff. ¶ 4.) Prior to the takeover, Irving Trust instituted a severance plan, which included payments for Irving Trust employees whose job duties were materially diminished during the two-year period following the takeover. (Def.'s 3(g) ¶ 96.)

After the takeover, Ali remained in his position as DOS technician. (Def.'s 3(g)

¶ 57.) In 1989, Ali asked John Petrock, the manager of the DOS department, to transfer him to the Network Control department. (Ali Dep. at 144, 153; Def.'s 3(g) ¶ 62; Petrock Aff. ¶ 8.) Network Control is part of the Bank's telecommunications center. (Ali Dep. at 153–55; Def.'s 3(g) ¶ 63; Petrock Aff. ¶ 8.) Ali alleges that Henry Rodriguez, a light-skinned Hispanic, was transferred to the Network Control position Ali desired. (Ali Dep. at 152, 155, 167; Def.'s 3(g) ¶ 64.) Ali stated in his deposition that he "[doesn't] know the name of the title in that department" or the qualifications for the position he claims he was seeking. (Ali Dep. at 169–70, 215–16.) There is no evidence that Rodriguez applied for or received a position in Network Control in 1989. (Def.'s 3(g) ¶ 65; Parker Aff. ¶ 15.) Rather, in 1989 Rodriguez was transferred from the MVS tape pool area to the VAX area of the DOS and Digital Production Group, another group in the DOS sector of the Computer Services Division. (Parker Aff. ¶ 16.) In this position Rodriguez received an annual salary of $31,434, substantially less than what Ali was earning. (Drescher Aff. ¶ 10.) The Bank claims that there was only one vacancy in the Network Control department in 1989, and that that job required a college degree, which Ali does not have. (Parker Aff. ¶ 18–19.) The Bank hired Tien Dinh to this position. Dinh had a B.S. from Niagara University and an M.B.A. in computer information systems from Pace University, as well as eight years of experience in computer programming. (Parker Aff. ¶ 20.)

In 1989, the Bank installed high-speed MVS software that was designed to eliminate lengthy computer processing delays. (Def.'s 3(g) ¶ 75; Petrock Aff. ¶ 7.) Petrock determined that Ali's position as a DOS technician might be eliminated because the new system was much more efficient. (Ali Dep. at 143; Def.'s 3(g) at ¶ 76; Petrock Aff. ¶ 7.) In May 1989, Ali received an increase in pay to $45,358 per year. (Def.'s 3(g) ¶ 83; Parker Aff. ¶ 14.)

In June 1989, the Bank offered Ali an assistant manager position in MVS on the same shift under the same working conditions and at the same rate of pay as his DOS technician position. Petrock told Ali that the new position would not involve a diminution of his job responsibilities. (Ali Dep. at 146, 157; Petrock Aff. ¶ 9.) At no time was Ali told he would be forced to resign his DOS position or face termination if he accepted the MVS position. (Ali Dep. at 165.) Although Ali initially rejected the assistant manager position, he eventually accepted it. (Ali Dep. at 143; Def.'s 3(g) ¶ 80, 84.) In this position he again reported to Drescher. (Ali Dep. at 76, 115–17, 119, 122, 126–30, 133–35, 141; Def.'s 3(g) ¶ 85.) As assistant manager, Ali's duties included acting as back-up for Drescher and supervising the operations area, production control, and the tape library. (Ali Dep. at 145–46; Def.'s 3(g) ¶ 87.) Ali was also required to mount cassette tapes into the computer's hard drive. (Ali Dep. at 145, 150, 213.) Ali's salary remained the same after he was transferred to the MVS area, and he continued to work the night shift under the same working conditions. (Def.'s 3(g) ¶ 88–89.) Ali had a good working relationship with Drescher and got along with his co-workers. (Def.'s 3(g) ¶ 91–92.)

Ali remained in this position in the MVS area for two months until he resigned from his employment at the Bank on July 31, 1989. (Ali Dep. 149–50; Def.'s 3(g) ¶ 94; Parker Aff. ¶ 23.) Ali states that he resigned because the assistant manager position required him to mount tapes. (Ali Dep. at 213; Def.'s 3(g) ¶ 95.) Ali submitted a request for severance under the Irving Trust Severance Plan, claiming that his job duties were diminished. (Ali Dep. at 158; Def.'s 3(g) ¶ 94, 98; Parker Aff. ¶ 23.) The Bank and an independent trustee eventually denied Ali severance because his responsibilities as assistant manager did not involve a diminution in duties. (Ali Dep. at 164–65; Def.'s 3(g) ¶ 99, 100.)

On January 10, 1990, Ali filed a complaint of discrimination with the New York State Division of Human Rights ("NYSDHR") and filed a charge of discrimination with the EEOC. Ali's NYSDHR complaint does not contain any allegations concerning the Bank's alleged failure to promote him to a technician support position. (Ali Dep. at 73–74.)

The plaintiff's complaint in this action alleges essentially three separate incidents of

discrimination: (1) he was unlawfully denied a promotion to the position of technician support in 1982; (2) he was unlawfully denied a position he sought in Network Control in 1989; and (3) he was unlawfully constructively discharged in 1989.

## II.

Because the parties refer to materials outside the pleadings, the Court treats the defendant's motion as one for summary judgment rather than a motion to dismiss under Fed.R.Civ.P. 12(b)(6).

■ Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Gallo v. Prudential Residential Servs., Ltd. Partnership*, 22 F.3d 1219, 1223 (2d Cir.1994). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *see also Gallo*, 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir.1994). "In considering the motion, the court's responsibility is not to resolve disputed issues of fact but to assess whether there are factual issues to be tried." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). Because the

plaintiff appears *pro se*, the complaint, "however inartfully pleaded," must be held to less stringent standards than formal pleadings drafted by lawyers. *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Patrick v. LeFevre*, 745 F.2d 153, 160 (2d Cir.1984).

■ On a motion for summary judgment, once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with specific facts to show there is a factual question that must be resolved at trial. *See* Fed.R.Civ.P. 56(e); *see also Cornett v. Sheldon*, 894 F.Supp. 715, 724 (S.D.N.Y.1995) ("[T]he plaintiff, to avoid summary judgment, must show a genuine issue by presenting evidence that would be sufficient, if all reasonable inferences were drawn in his favor, to establish the existence of that element at trial." (citing *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53)). A plaintiff must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir.1993); *see Wyler v. United States*, 725 F.2d 156, 160 (2d Cir.1983); *Cornett*, 894 F.Supp. at 724.

## III.

The defendant seeks judgment dismissing the complaint on several grounds. First, the defendant argues that the plaintiff has failed to establish a prima facie case of discriminatory discharge. Second, the defendant contends that the plaintiff's claim that the Bank discriminatorily failed to promote him in 1982 is time-barred. Third, the defendant argues that the plaintiff has failed to establish a prima facie case that he was discriminatorily denied a promotion in 1989.

### A.

The plaintiff first claims that he was discriminatorily discharged in violation of Title VII and the New York Human Rights law.[1]

1. Claims brought under the New York Human Rights law require the same burden of proof as Title VII claims. *See Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1180 (2d Cir.1992); *Fitzgerald v. Alleghany Corp.*, 904 F.Supp. 223, 227 (S.D.N.Y.1995).

The defendant argues that this claim must be dismissed because the plaintiff has failed to establish a prima facie case of discrimination based on this alleged discharge.

■ In an employment discrimination case alleging discriminatory discharge, the plaintiff has the burden of proving a prima facie case of discrimination. *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir.1995) (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 503–08, 113 S.Ct. 2742, 2746–47, 125 L.Ed.2d 407 (1993)). To state a prima facie case, the plaintiff must allege that he (1) is a member of a protected class; (2) was qualified for a particular position; (3) was discharged from that position; and (4) was discharged under circumstances giving rise to an inference of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Chambers*, 43 F.3d at 37. A plaintiff must set forth specific factual allegations establishing a prima facie case. *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir.1987) ("As we have repeatedly held, relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning."); *Alie v. NYNEX Corp.*, 158 F.R.D. 239, 244 (E.D.N.Y.1994). However, the Court must be alert that "[b]ecause an employer who discriminates is unlikely to leave a 'smoking gun' attesting to a discriminatory intent, a victim of discrimination is seldom able to prove his claim by direct evidence, and is usually constrained to rely on circumstantial evidence." *Chambers*, 43 F.3d at 37. Accordingly, the plaintiff's burden to show a prima facie case is "de minimis." *Cronin*, 46 F.3d at 203–04.

The defendant does not contest that the plaintiff has established the first two elements of a prima facie discrimination case, that he is a member of a protected class and that he was qualified for his position. The defendant argues, however, that Ali has failed to satisfy the "discharge" element of a prima facie case and to set forth circumstances giving rise to an inference of discrimination.

■ The "discharge" element of a prima facie case of employment discrimination can be satisfied by either an actual termination or a constructive discharge. *See Stetson v. NYNEX Serv. Co.*, 995 F.2d 355 (2d Cir. 1993). Ali concedes that Bank never terminated his employment, (Ali Dep. at 149), but contends that he was constructively discharged.

■ In order to maintain a claim of constructive discharge, the plaintiff must present evidence sufficient to permit a rational jury to conclude that the employer deliberately created working conditions that were " 'so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.' " *Stetson v. NYNEX Serv. Co.*, 995 F.2d 355, 361 (2d Cir.1993) (quoting *Pena v. Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir.1983)).

■ Ali has failed to present evidence indicating that the working conditions at the Bank were " 'so intolerable that he [was] forced into an involuntary resignation.' " *Stetson*, 995 F.2d at 360 (quoting *Pena v. Brattleboro Retreat*, 702 F.2d at 325). Ali admits that the primary reason he resigned was that he was required to mount tapes. (Ali Dep. at 213–15.) To maintain a discrimination claim based on constructive discharge, however, a plaintiff must show more than he was dissatisfied with his assignments or that the working conditions were difficult or unpleasant. *Stetson*, 995 F.2d at 360; *Barbagallo v. General Motors Corp.*, No. 88 Civ. 1534, 1996 WL 19004, at *5 (S.D.N.Y. Jan. 17, 1996) (Lowe, J.); *Sastri v. KLM Royal Dutch Airlines*, No. 92 Civ. 5534, 1995 WL 746458, at *3 (S.D.N.Y. Dec. 15, 1995) (Cote, J.); *Monica v. New York City Off–Track Betting Corp.*, No. 93 Civ. 6371, 1995 WL 117879, at *6 (S.D.N.Y. Mar. 20, 1995) (Patterson, J.). Ali offers no evidence that his salary, benefits, or hours of employment were changed when he became assistant manager in the MVS area. In addition, Ali admits that he had a good working relationship with his MVS co-workers and supervisor. (Ali Dep. at 211–13, 216.) In sum, Ali has failed to proffer any evidence to support the discharge element of his prima facie case.

Even if the plaintiff had established that he was constructively discharged, he has failed to present evidence demonstrating that this discharge occurred under circumstances giving rise to an inference of discrimination based on his race, color, or national origin as required to establish a prima facie case. Ali received numerous promotions, salary increases, and favorable performance evaluations during his employment at Irving Trust and the Bank. Ali concedes that he got along with his co-workers and his supervisor. There is no evidence proffered that Ali's position was filled by someone not in the protected class. Furthermore, Ali admitted in his deposition that he knew of no oral or written statements that would indicate discrimination, and he has not identified anyone at the Bank who allegedly discriminated against him. In sum, the plaintiff has failed to present any material facts indicating that the Bank created the allegedly intolerable working conditions with a discriminatory animus.

Because the plaintiff has failed to establish a prima facie case of employment discrimination based on his resignation from the Bank, the defendant's motion for summary judgment dismissing this claim must be granted.

## B.

The plaintiff also claims that Irving Trust's failure to promote him to a technician support position in 1982 constitutes employment discrimination under Title VII and under New York Human Rights Law.[2] The defendant contends that both of these claims are time-barred.[3]

Before commencing an employment discrimination action, claimants are required to file charges with an appropriate administrative agency. *See* 42 U.S.C. § 2000e–5; *Gomes v. Avco Corp.*, 964 F.2d 1330, 1332–33 (2d Cir.1992); *Hogan v. 50 Sutton Place So. Owners, Inc.*, 919 F.Supp. 738, 746 (S.D.N.Y.1996). A plaintiff must also receive a right-to-sue letter from the EEOC to proceed with a Title VII claim in federal court. 42 U.S.C. § 2000e–5(f)(1); *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 149, 104 S.Ct. 1723, 1724–25, 80 L.Ed.2d 196 (1984); *Hogan*, 919 F.Supp. at 746.

Ali concedes that he did not file a charge of discrimination with the EEOC, NYSDHR, or other similar agency alleging that he was unlawfully denied the technician support position, and that he has not received a right-to-sue letter from the EEOC. In addition, Ali does not argue that he is entitled to the equitable modification of these requirements and has presented no facts that would support such a modification. Accordingly, the plaintiff's claim that the Bank discriminated against him in violation of Title VII because he was not promoted to the technician support position must be dismissed. *See Hogan*, 919 F.Supp. at 746 (dismissing discrimination claim under Title VII because plaintiff failed to file claim with administrative agency or to receive a right-to-sue letter).

The plaintiff's discrimination claim under the New York Human Rights Law based on the same alleged promotion denial is not subject to the same filing requirements as Title VII claims. The New York Human Rights Law claim is time-barred, however, because the plaintiff did not bring this action within the applicable three-year statute of limitations. *See Van Zant*, 80 F.3d at 714 (explaining that New York Human Rights Law claims are not subject to the same filing requirements as Title VII but are rather governed by a three-year statute of limitations contained in N.Y.Civ.Prac.L. & R. 214(2)). The complaint in this action was filed more than twelve years after the alleged

---

2. This claim does not actually appear in the plaintiff's complaint.

3. The defendant actually argues that the Court lacks subject matter jurisdiction over these claims because the plaintiff did not file a claim with the appropriate administrative agency. The filing requirement is not a jurisdictional prerequisite, however, but rather is analogous to a statute of limitations, subject to waiver, estoppel, and equitable tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132–33, 71 L.Ed.2d 234 (1982); *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir.1996); *Hogan v. 50 Sutton Place So. Owners, Inc.*, 919 F.Supp. 738, 746 (S.D.N.Y.1996).

discriminatory act and is therefore plainly time-barred.

## C.

The plaintiff also alleges that in 1989 he was discriminatorily denied a transfer or promotion to a Network Control position. Because the plaintiff has failed to establish a prima case of discrimination based on this alleged promotion denial, the plaintiff's state and federal discrimination claims based on this denial must also be dismissed.

▮ In the absence of any direct evidence of discrimination, a plaintiff in an employment discrimination case has the burden of proving a prima facie case of discrimination under the *McDonnell Douglas* test. *St. Mary's Honor Ctr.*, 509 U.S. at 503–08, 113 S.Ct. at 2746–47; *Cronin*, 46 F.3d at 203. A prima facie case of employment discrimination based on the failure to promote consists of the following four elements: (1) the plaintiff is a member of a protected class; (2) he applied for a position for which he was qualified; (3) he did not receive the position he sought; and (4) the person selected for the position was not a member of the protected class. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Chambers*, 43 F.3d at 37. The defendant argues that the plaintiff has not established a prima facie case because he has not proffered evidence that he applied for or was qualified for a position he was denied.

▮ In this case, there is no direct evidence of discrimination, and the plaintiff has not established a prima facie case of discrimination under the *McDonnell Douglas* test. Ali claims that in 1989 he sought a position in Network Control but that another individual, a light-skinned Hispanic named Rodriguez, received the job instead. However, the record reveals that there was only one open position in Network Control at this time, and that Rodriguez neither applied for nor received this position. Instead, in 1989 Rodriguez was transferred to the VAX area of the DOS department, where he received an annual salary of $31,434, or more than $12,000 less than what Ali was earning at the time. The only position open in 1989 was for a lead telecommunications programmer, and Ali has failed to present any evidence to the contrary. The qualifications for this position included a college degree, preferably in either computer science, mathematics or electrical engineering. Ali does not possess a college degree of any kind. The person actually hired for this position had an M.B.A. degree in computer systems. Accordingly, because the plaintiff has failed to proffer any evidence that he sought and was denied a position for which he was qualified, he has failed to establish a prima facie case of employment discrimination based on the failure to promote. *See, e.g., de la Cruz v. New York City Human Resources Admin. Dep't of Social Servs.*, 884 F.Supp. 112, 116 (S.D.N.Y.1995) (Motley, J.) (granting defendants' summary judgment motion because plaintiff presented no evidence that he was qualified for the position he sought).

## CONCLUSION

For the reasons stated above, the defendant's motion for summary judgment dismissing this action is GRANTED. The Clerk of the Court is directed to enter judgment dismissing the complaint and closing this case.

**SO ORDERED.**