**UNITED STATES of America,
Plaintiff,**

**v.**

**Joseph LETSCHER, et al., Defendants.**

**No. 95 CIV. 993(JGK).**

United States District Court,
S.D. New York.

Sept. 27, 1999.

Order Denying Reconsideration,
Dec. 21, 1999.

Kathleen Zebrowski, AUSA, for the Plaintiff.

Joseph Letscher, New York City, pro se.

## OPINION AND ORDER

KOELTL, District Judge.

The complaint in this action seeks to reduce to judgment an assessment of federal tax liabilities, interest, fees, penalties, and statutory additions (collectively, the "tax liabilities") against the defendant Joseph Letscher, who was convicted of failing to file federal tax returns and tax

evasion. Pending now are: cross-motions for summary judgment by the Government and by Mr. Letscher; the Government's motion for a default judgment against defendant Irene Letscher Vingo; the Government's motion to amend the caption and to dismiss various defendants; and Mr. Letscher's motion to strike various evidentiary materials submitted by the Government.

## I.

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)); *see also Gallo,* 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. *See Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 37 (2d Cir.1994). "In considering the motion, the court's responsibility is not to resolve disputed issues of fact but to assess whether there are factual issues to be tried." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). Because the defendants Joseph Letscher and Irene Letscher Vingo appear pro se, their pleadings, "however inartfully pleaded," must be held to less stringent standards than formal pleadings drafted by lawyers. *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Patrick v. LeFevre,* 745 F.2d 153, 160 (2d Cir.1984).

On a motion for summary judgment, once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with specific facts to show there is a factual question that must be resolved at trial. *See* Fed. R.Civ.P. 56(e); *see also Cornett v. Sheldon,* 894 F.Supp. 715, 724 (S.D.N.Y.1995). A party opposing summary judgment must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 532 (2d Cir.1993); *see Wyler v. United States,* 725 F.2d 156, 160 (2d Cir. 1983); *Cornett,* 894 F.Supp. at 724; *see also Ali v. Bank of New York,* 934 F.Supp. 87, 91 (S.D.N.Y.1996).

## II.

There is no genuine dispute with respect to the following facts. In March 1993, Mr. Letscher was convicted of willfully evading the payment of federal taxes for the years 1986 and 1987, and of failing to file federal income tax returns for the years 1984 and 1985. *See United States v. Letscher,* No. 91 Cr. 331(KC), judgment (S.D.N.Y. July 20, 1993), attached as Ex. C to Declaration of Kathleen Zebrowski dated Sept. 25, 1998 ("9/25/98 Zebrowski Decl."). Mr. Letscher was sentenced to 33 months imprisonment, followed by 3 years supervised release. *See id.* At sentencing, Judge Kenneth Conboy determined that Mr. Letscher's actions warranted an enhanced sentence under the federal sentencing guidelines. *See United States v. Letscher,* 40 F.3d 1237, slip op., at 2–3 (2d

Cir. Oct. 26, 1994), attached as Ex. D to 9/25/98 Zebrowski Decl. The district court found that a two level increase in the offense level was warranted because of Mr. Letscher's use of sophisticated means of concealing income through his use of unincorporated business organizations and the abuse of W–4 forms. The Court found a further two level increase was warranted based on the defendant's perjury during trial, material misrepresentations to Government agents, and "flooding the court" with frivolous and redundant motions during the two years prior to trial. The Court also found that a three-level upward departure was justified based on Mr. Letscher's filing frivolous post-trial criminal complaints against the Internal Revenue Service (the "IRS") and the Assistant United States Attorney who prosecuted the case and Mr. Letscher's attempts to file liens against property owned by Government personnel. *See id.* at 2.

The judgment of conviction and sentence were affirmed by the Court of Appeals for the Second Circuit. *See id.* The Court of Appeals noted that the evidence at trial showed that Mr. Letscher had:

> engaged in a systematic, long-term plan to evade the payment of income taxes. He minimized and even eliminated withholding taxes by submitting false Internal Revenue Service ("IRS") W–4 forms to employers, resulting in the under-withholding of significant taxes. Letscher then failed to file tax returns to report income earned from these employers. He also created sham organizations to conceal real estate profits.

*See id.* at 1–2.

In his own defense, Mr. Letscher did not dispute that he earned income during the years charged in the indictment, or that he had not filed tax returns. *See id.* at 2. Rather, he contended that he did not believe that individuals are required to file tax returns or pay taxes. *See id.* He therefore argued that he had a good faith

misunderstanding of the federal tax laws. *See id.*

At his criminal trial, Mr. Letscher testified that he filed tax returns and paid his taxes until 1980. (Tr.[1] at 648.) In 1981, he began listening to and reading materials prepared by Irwin Schiff, a tax protester. (Tr. at 651.) Starting from late 1980, Mr. Letscher attended several seminars hosted by Mr. Schiff. (Tr. at 700.) He also subscribed to newsletters prepared by Mr. Schiff. (Tr. at 702–03.) On the basis of information from Mr. Schiff and Mr. Letscher's own research, Mr. Letscher decided not to file any more tax returns because he could not find any law which required him to do so. (Tr. at 675, 708.)

In or about March 1987, Mr. Letscher went to Hawaii to learn about, among other things, "trusts." (Tr. at 744–45.) There, he met Michael Kailing, an accountant who is not a party to this action, who was allegedly knowledgeable about trusts. (Tr. at 746–47, 758.) Shortly afterwards, Mr. Letscher formed New York Investment International, Inc. ("NYII") and named Mr. Kailing, whom Mr. Letscher had allegedly known for only a few months, as the trustee. (Tr. at 747, 751, 758.) Mr. Letscher funded the trust in part with his own paychecks. (Tr. at 901.) In 1987, he deposited approximately $22,895 into the NYII account. (Tr. at 993–94.) He also stated that he served as the "agent-president" of NYII and his sister, Irene Letscher Vingo, was the secretary of NYII. (Tr. at 897, 900.) Mr. Letscher had signing and deposit authority over the trust account. (Tr. at 902.)

Mr. Letscher testified at his criminal trial that he created NYII in 1987 as a trust for the benefit of his nieces and nephews. (Tr. at 747.) Other than his title as agent-president, Mr. Letscher alleged that he retained no interest in the trusts. (Tr. at 898.) He described NYII was an "irrevocable" trust and understood

---

**1.** "Tr." refers to the transcript of the criminal trial of defendant Joseph Letscher for tax

evasion and failing to file tax returns, and is attached as Ex. E to 9/25/98 Zebrowski Decl.

that he was not to use the trust fund for his personal expenses. (Tr. at 903). However, he also characterized the money that he deposited into NYII as "loans" even though there were no loan documents. (Tr. at 903–04.) Mr. Letscher testified that he believed he could write himself a check if he needed the money he had allegedly loaned to the trust, provided the amount of the check was for less than $25,000. (Tr. at 904, 908.) Evidence adduced at trial proved that Mr. Letscher wrote checks drawn on the NYII bank account to pay his dentist, to rent a summer house, to pay off his credit card balances, to buy clothing, and to purchase groceries. (Tr. at 908–11.)

Mr. Letscher also testified that in 1969, his mother executed a deed transferring title to the property at 113 Glover Avenue in Yonkers, New York (the "Property") to him and his sister, Irene Letscher Vingo, reserving a life estate. (Tr. at 708–10.) In 1972, when their mother died, Mr. Letscher and Ms. Vingo obtained full title to the Property. (Tr. at 711.) In January 1988, Mr. Letscher transferred his interest in the Property to NYII. (*See* Indenture dated Jan. 4, 1988 and Sch. A attached as Ex. G to 9/25/98 Zebrowski Decl.)

Mr. Letscher testified that he personally incurred expenses to maintain the Property during 1983–1987. (Tr. at 834.) He stated that he fixed the plumbing in the house and also made some of the premium payments to maintain the insurance on the Property. (Tr. at 834.) Moreover, he testified that he occasionally lived at the Property. (Tr. at 846.)

In April 1992, the Government, through the IRS District Office, assessed the defendant for unpaid federal income taxes, interest, and penalties for the tax years 1981 through 1990. (*See* Letter from Shirley Peterson dated Apr. 21, 1992 ("4/21/92 Peterson Letter"), attached as Ex. A to Supplemental Declaration of Michael Kelly dated Dec. 30, 1998 ("12/30/98 Kelly Supp. Decl.").) The total amount assessed as of April 21, 1992 was $314,793. (*See id.*)

Notices of assessment and demands for payment for the assessed liabilities were sent to Joseph Letscher individually and to NYII, Joseph Letscher, sole proprietor. (*See id.*; Decl. of Michael Kelly dated Sept. 24, 1998 ("9/24/98 Kelly Decl.") ¶ 4.)

On or about April 23, 1992 and April 24, 1992, the Government filed notices of federal tax liens reflecting these assessments against both Mr. Letscher and NYII with the Registers of New York and Westchester Counties, respectively. (*See* 9/24/98 Kelly Decl. ¶ 5.)

As of September 16, 1998, the sum of $532,116.50 in tax liabilities was due and owing to the United States for the tax years 1981 through 1990. (*See* 9/24/98 Kelly Decl. ¶ 9.)

On February 10, 1995, the Government commenced this action to reduce to judgment the assessment of tax liabilities against Mr. Letscher, and to enforce and foreclose federal tax liens on the defendant's interest in the Property. (*See* Compl.) The complaint also names as defendants the following parties: Irene Letscher Vingo, a tenant in common of the Property; the New York State Tax Commission and the National Westminster Bank ("the Bank"), which may have liens on the Property; and John Does 1–5 and Jane Does 1–5, who are unidentified individuals residing at the Property. Since the filing of the complaint, Francis Haviland and Mary Haviland and no others have been identified as the residents at the Property.

On or about April 10, 1995, Mr. Letscher entered a "Notice of Special Appearance for the Limited Purpose of Objecting to the Response filed by the Government—United States." This Court construed the notice as a motion to dismiss for improper service of process, lack of personal jurisdiction, and improper venue and denied the motion. (*See* Memorandum Endorsement dated Aug. 9, 1995.) This Court also directed Mr. Letscher to serve and file an answer by September 1, 1995. *See id.*

Defendant State Tax Commission entered a Notice of Appearance but has not moved or answered the complaint. (*See* Notice of Appearance dated Mar. 13, 1995 attached as Ex. B to 6/21/99 OTSC.) The defendant Bank filed an answer waiving any service of papers and notices except notices of sale and notices of proceeding to obtain surplus monies. (*See* Ans. dated Apr. 10, 1995, attached as Ex. B to 6/21/99 OTSC.) Defendants Francis Haviland and Mary Haviland have not moved or answered with respect to the complaint.

On July 17, 1996, the Clerk of the Court entered a default against each of the defendants. (*See* Clerk's Cert. dated July 17, 1996, attached as Ex. B to Order to Show Cause dated July 17, 1996 ("7/17/96 OTSC").) The Government then moved by order to show cause for a default judgment against the defendants. (*See* 7/17/96 OTSC.) Mr. Letscher then filed an answer to the complaint, and promptly filed a voluntary petition for bankruptcy. On January 12, 1998, the Bankruptcy Court dismissed Mr. Letscher's petition. (*See* Order dated Jan. 12, 1998, attached as Ex. H to 9/25/98 Zebrowski Decl.)

In September 1998, the Government filed this motion for summary judgment reducing the assessment of tax liabilities against Mr. Letscher to judgment and foreclosing the federal tax liens on the Property. Mr. Letscher opposes the motion and has cross-moved for summary judgment on various bases.

As to the other defendants, the Government obtained a new Certificate of Default dated June 18, 1999 from the Clerk of the Court. (See Clerk's Certif. dated June 18, 1999, attached as Ex. B to Order to Show Cause dated June 18, 1999 ("6/18/99 OTSC").) The Government then moved by Order to Show Cause for a Default Judgment. (6/18/99 OTSC.) Defendant Vingo then filed an answer to the complaint. (*See* Ans. dated July 26, 1999). By letter dated September 21, 1999, the Government advised the Court that the Government has settled its action against Ms. Vingo and that a stipulation will be submitted. (*See* Letter of Kathleen Zebrowski dated Sep. 21, 1999.) The other defendants did not respond to the Order to Show Cause and, after finding that the Government's motion was justified, by Order dated July 8, 1999, this Court granted a default judgment against the State Tax Commission, the Bank, Francis Haviland, and Mary Haviland. (*See* Order dated July 8, 1999.)

## III.

### (A)

The Government moves for summary judgment on the first cause of action to reduce the federal tax assessments against Mr. Letscher to judgment and to foreclose on the federal tax liens.

 With the exception of civil fraud penalty assessments, an IRS notice of tax deficiency is presumed to be correct. *See Moretti v. Comm'r of Internal Revenue*, 77 F.3d 637, 643 (2d Cir.1996); *Andrew Crispo Gallery, Inc. v. Comm'r of Internal Revenue*, 16 F.3d 1336, 1341 (2d Cir.1994); *Schaffer v. Commm'r of Internal Revenue*, 779 F.2d 849, 857 (2d Cir.1985); *Carter v. United States*, 717 F.Supp. 188, 191 (S.D.N.Y.1989). In general, there are two aspects to this presumption of correctness: the procedural burden of going forward with the evidence and the substantive burden of persuasion. *See Schaffer*, 779 F.2d at 857. A taxpayer challenging the asserted deficiency has the burden of proving that the deficiency is incorrect by a preponderance of the evidence. *See Moretti*, 77 F.3d at 643; *Schaffer*, 779 F.2d at 857–58.

In this case, the IRS District Director sent a notice of deficiency to Mr. Letscher on April 21, 1992. (*See* 4/21/92 Peterson Letter; *see also* 26 U.S.C. § 6861.[2]) The

---

2. 26 U.S.C. § 6861 provides, in relevant part:

(a) Authority for making.—If the Secretary

notice clearly informed Mr. Letscher that the following cumulative amounts were due and owing for tax years 1981 through 1990: $107,539 in taxes, $111,012 in penalties, and $96,242 in interest. (*See* 4/21/92 Peterson Letter.) The letter also provided a breakdown of these charges. (*See id.*) Attached to the letter was a copy of Form 2644 which contained the IRS Examination Division's recommendation of the jeopardy assessment of deficiency. (*See* Form 2644 attached as Ex. A to Supplemental Declaration of Michael Kelly dated Dec. 30, 1998 ("12/30/98 Kelly Supp. Decl.").) Moreover, the Government has also submitted verified Certificates of Assessments and Payments to support the assessment. (*See* Certs. of Assessments and Payments attached as Ex. C to Supplemental Declaration of Kathleen Zebrowski dated January 5, 1999 ("1/5/99 Zebrowski Supp. Decl.").) Thus, except for the civil fraud penalties, the assessment of tax liabilities as reflected in the notice of deficiency is entitled to a presumption of correctness.

With respect to the civil fraud penalties, they "can be imposed if the Commissioner proves by clear and convincing evidence that [the] taxpayer[ ] acted with an intent to evade paying taxes." *Schiff v. United States*, 919 F.2d 830, 833 (2d Cir.1990) (citation omitted). Fraud can be proved by circumstantial evidence, including: "(1) consistent and substantial understatement of income, (2) failure to maintain adequate records, (3) failure to cooperate with an IRS investigation, (4) inconsistent or implausible explanations of behavior, and (5) awareness of the obligation to file returns, report income and pay taxes." *Id.* (citation omitted). The Court of Appeals for the Second Circuit has made it clear that the fraud penalty can be upheld on a motion for summary judgment when there is clear and convincing evidence. *Id.*

In this case, Mr. Letscher failed to file tax returns for ten consecutive years and engaged in conduct evincing a clear intent to evade taxes. He was convicted of willful tax evasion for the years 1986 and 1987 and for failure to file federal income tax returns for 1984 and 1985. His conviction was affirmed on appeal. Mr. Letscher established NYII, a trust which he described as an irrevocable trust and which he understood was not to be used for personal expenses. Yet, he conceded that he drew numerous checks on the NYII account for personal expenses. He also transferred the Property at 113 Glover Avenue to NYII, yet he continued to treat the Property as personal property by paying expenses on the Property and by living in the Property from time to time. Moreover, the trial judge who sentenced Mr. Letscher on his criminal conviction determined that a two-level increase of the baseline sentence under the federal sentencing guidelines was appropriate "for the use of sophisticated means of concealing income based on Letscher's use of unincorporated business organizations and the abuse of W–4 forms." *See Letscher*, 40 F.3d 1237, slip op., at 2.

■ Mr. Letscher also actively obstructed efforts by the Government to investigate his tax account. The trial court found that an additional two-level increase was appropriate for "perjury during trial, material misrepresentations made to government agents, and flooding the court with numerous frivolous and redundant motions during the two years prior to trial." *See*

---

[of the Treasury] believes that the assessment or collection of a deficiency, as defined in section 6211, will be jeopardized by delay, he shall, notwithstanding the provisions of section 6213(a), immediately assess such deficiency (together with all interest, additional amounts, and additions to the tax provided for by law), and notice and demand shall be made by the Secretary for the payment thereof.

(b) Deficiency letters.—If the jeopardy assessment is made before any notice in respect of the tax to which the jeopardy assessment relates has been mailed under section 6212(a), then the Secretary shall mail a notice under such subsection within 60 days after the making of the assessment.

**374**

*id.* at 2 (quotation marks omitted). Mr. Letscher's pattern of misconduct provides clear and convincing evidence that he intended to evade payment of federal income taxes and justifies the imposition of civil fraud penalties.

The Government's motion for summary judgment on the first cause of action is therefore **granted.**

**(B)**

The Government also move for summary judgment on the second and third causes of action to enforce and foreclose the federal tax liens on Mr. Letscher's interest in the Property. The second cause of action alleges that NYII is the alter ego of Mr. Letscher. The third cause of action alleges that the transfers of assets by Mr. Letscher to NYII constituted fraudulent conveyances.

Section 6321 of the Internal Revenue Code (the "Code") provides: "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." *See also United States v. Nat'l Bank of Commerce,* 472 U.S. 713, 719, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985); *United States v. McCombs,* 30 F.3d 310, 321 (2d Cir.1994). Pursuant to § 6321, a tax lien arises automatically at the time of the assessment and continues thereafter until the underlying tax liability is satisfied or collection is barred by the statute of limitations. *See* 26 U.S.C. § 6322; *see also Nat'l Bank of Commerce,* 472 U.S. at 719, 105 S.Ct. 2919. Where property is held by a third party, 26 U.S.C. § 6332(a) authorizes the government to serve a notice of levy on the third party. *See also Congress Talcott Corp. v. Gruber,* 993 F.2d 315, 318

(3d Cir.1993); *Schiff v. Simon & Schuster, Inc.,* 780 F.2d 210, 212 (2d Cir.1985).

A federal tax lien is not self-executing; one way to enforce a tax lien, as employed by the Government here, is the lien-foreclosure suit pursuant to 26 U.S.C. § 7403. *See Nat'l Bank of Commerce,* 472 U.S. at 720, 105 S.Ct. 2919. In order to determine the nature of a delinquent taxpayer's interest in property, federal courts look to the law of the state where the property is located. *See id.* at 722, 105 S.Ct. 2919 ("[I]n the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property.") (internal citation omitted); *McCombs,* 30 F.3d at 323 (" 'federal ... courts must look to state law' to ascertain whether a taxpayer has a property interest in property subject to a federal tax lien.") (quoting *Aquilino v. United States,* 363 U.S. 509, 512–13, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960)). By using the broad language "all property and rights to property" [in 26 U.S.C. § 6321] ... "Congress meant to reach every interest in property that a taxpayer might have." *Nat'l Bank of Commerce,* 472 U.S. at 719–20, 105 S.Ct. 2919. "[O]nce it has been determined that state law creates sufficient interests in the [taxpayer] to satisfy the requirements of [the statute], state law is inoperative, and the tax consequences thenceforth are dictated by federal law." *Id.* at 722, 105 S.Ct. 2919.

In this case, Mr. Letscher has not disputed that the interest in the Property which he transferred to NYII is a cognizable property interest under New York law. Mr. Letscher also does not dispute that NYII is his alter ego or nominee or that the transfer of the Property to NYII constituted a fraudulent conveyance. Indeed, on the basis of the summary judgment evidence, such challenges would be groundless. The evidence establishes without genuine dispute that Mr. Letscher retained signing authority over the NYII account and exercised that authority to

write checks on the NYII account for his personal expenses. While Mr. Letscher alleged that his transfers were loans, there was no documentation. Moreover, he occasionally lived at the Property as a personal residence which he then transferred to NYII. *See LiButti v. United States,* 107 F.3d 110, 119 (2d Cir.1997) ("The factors employed under alter ego analysis are essentially designed to attack the corporate structure, such as the intermingling of corporate and personal funds, ... failure to observe corporate formalities such as the maintenance of separate books and records, ... [and] siphoning off of funds by the dominant shareholder ....") (citation omitted). These actions show that NYII was a sham organization.

■ It is well-established that the IRS may proceed against an alter ego or nominee of a delinquent taxpayer for the purposes of satisfying the taxpayer's obligations. *See id.* at 119 (collecting cases and noting that under the theory of "reverse piercing," assets of a corporate entity may be used to satisfy the debts of the controlling alter ego). Because the Government has adduced uncontradicted evidence to establish that NYII is the alter ego of Mr. Letscher, summary judgment enforcing the lien on the interest in the Property transferred by Mr. Letscher to NYII is proper.

The Government seeks to enforce the liens by selling the entire property and, after deducting the costs of foreclosure, by dividing the proceeds equally with defendant Irene Letscher Vingo. The Government has advised the Court that it has settled this action against Ms. Vingo.

**3.** The Government initially submitted a computer-generated document entitled "IMF MCC Transcript—Complete" which the Government asserted provided the backup data for the assessments against Mr. Letscher. (*See* "IMF MCC Transcript—Complete" attached as Ex. A to 9/24/98 Kelly Decl.) Mr. Letscher complained that this data was incomprehensible. Therefore, Magistrate Judge Andrew Peck afforded Mr. Letscher an oppor-

**IV.**

**(A)**

Mr. Letscher asserts that the Government failed to assess his income taxes according to the procedures required by the Code and he seeks summary judgment on the basis of those alleged deficiencies.

Mr. Letscher argues that the IRS procedure in this case was defective because the IRS failed to provide proof that it completed a Form 23–C, which he contends is required under § 6203 ("Method of Assessment"). Moreover, he argues that Form 23–C must be supported by "assessment lists" which provide the identification of the taxpayer by name and number, the tax period, the nature of the tax and the amount assessed.[3] The argument is without merit

The Government has submitted a Summary Record of Assessments ("Summary Record") for Mr. Letscher's account. (*See* Summary Record dated Apr. 21, 1992, attached as Ex. B to Supplemental Declaration of Michael Kelly dated July 14, 1999 ("7/14/99 Kelly Supp. Decl.").) IRS Officer Kelly has sworn that the Summary Record is the computer-generated equivalent of a handwritten or hand-typed Form 23–C. (*See* 7/14/99 Kelly Supp. Decl. ¶ 3.) The Summary Record shows "deficiency assessments" of $107,539 in taxes, $111,012 in penalties, and $96,242 in interest, for a total of $314,793 as of April 21, 1992. (*See* Summary Record at 1.) These assessments were calculated based on "individual inc[ome]." (*See id.*)

■ The figures in the Summary Record correspond to the amounts in the Certificates of Assessments and Payments[4] for tax years at issue, which provide the official backup data for Mr. Letscher's tax

tunity to depose Michael Kelly. (*See* Order dated Oct. 27, 1998). The deposition was taken on December 2, 1998. (*See* Tr. Kelly Dep. dated Dec. 2, 1998.)

**4.** The Certificate of Assessments and Payments was formally known as a "Form 4340." (*See* 7/14/99 Kelly Supp. Decl. ¶ 4.)

liabilities.[5] (*See* Certs. of Assessments and Payments attached as Ex. C to 1/5/99 Zebrowski Supp. Decl.; Supplemental Declaration of Michael Kelly dated July 14, 1999 ("7/14/99 Kelly Supp. Decl.) ¶ 4".) These Certificates indicate the identity of the taxpayer, the social security number, the amounts and dates of assessments, and the dates of first notice of delinquency. "Certificates of Assessments and Payments are routinely used to prove that tax assessment has in fact been made.... They are presumptive proof of a valid assessment." *Geiselman v. United States,* 961 F.2d 1, 6 (1st Cir.1992) (citations and internal quotation marks omitted) (accepting Certificates of Assessment and Payments as proof of valid tax assessment even where the government did not provide a Form 23–C); *see also McCarty v. United States,* 929 F.2d 1085, 1089 (5th Cir.1991) (Certificate of Assessment and Payments admissible proof that statutory requirements were satisfied); *Envtl. Defense Fund v. United States,* No. 91 Civ. 7232, 1997 WL 289412 at *4 (S.D.N.Y. June 2, 1997) ("Certificates of Assessments and Payments are entitled to a presumption of correctness, and the taxpayer has the burden of overcoming this presumption and proving that the assessments are erroneous."). Mr. Letscher in this case has presented no evidence to overcome the presumed correctness of the Certificates submitted by the Government.[6]

### (B)

■ Mr. Letscher also argues that he is entitled to summary judgment on the ground that he did not receive the notice of deficiency pursuant to § 6212. This argument is also without merit. The notice of deficiency in this case was sent pursuant to § 6861 ("Jeopardy Assessments"). Section 6861 provides that the notice required under § 6212(a) must be mailed within 60 days after the jeopardy assessment is made. *See* 26 U.S.C. § 6861(b). This requirement was satisfied in this case. The recommendation for a jeopardy assessment against Mr. Letscher was signed on April 21, 1992. The notice to Mr. Letscher was also dated April 21, 1992 and Mr. Letscher actually acknowledged its receipt. (*See* 4/21/92 Peterson Letter and Form 2644; Letter from Joseph Letscher dated May 20, 1992 ("5/20/92 Letscher Letter") attached as Ex. B to 12/30/98 Kelly Supp. Decl.) In his May 20, 1992 letter, Mr. Letscher expressly wrote: "Your notice received April 27, 1992 ...." (*See* 5/20/92 Letscher Letter at 1.) That letter, which quoted passages from the notice of deficiency, leaves no doubt that he received the April 21, 1992

---

**5.** The plaintiff challenges the authenticity of the Certificates of Assessments and Payments on the ground that the Certificates themselves have not been verified. He also moves to strike them. This argument is frivolous and the application to strike them is denied. The Certificates are authenticated by a Certificate of Official Record, which is signed and contains the official IRS seal. The Certificate of Official Record expressly states that the 11 pages of Certificates of Assessments and Payments are "for the account of Joseph Letscher, Form 1040, for the tax period(s) ending December 31, 1981 through December 31, 1990 ...." (*See* Cert. of Official Record attached as Ex. C to 1/5/99 Zebrowski Supp. Decl.) *See also* Fed.R.Evid. 902(1), 1005; *McCarty v. United States,* 929 F.2d 1085, 1089 (5th Cir.1991).

**6.** Mr. Letscher moved to expand the motion for Summary Judgment to argue further why

there was no evidence that he owed tax or the tax was properly assessed. All of these arguments were raised in reply and could be rejected on that basis alone. *See, e.g., Abdel–Khalek v. Ernst & Young LLP,* No. 97 Civ. 4514, 1999 WL 190790 at * 6 (S.D.N.Y. April 7, 1999) (declining to consider argument raised for the first time in reply papers); *Playboy Enterprises, Inc. v. Dumas,* 960 F.Supp. 710, 720 n. 7 (S.D.N.Y.1997) (stating that "[a]rguments made for the first time in a reply brief need not be considered by a court" and collecting cases), *aff'd,* 159 F.3d 1347 (2d Cir.1998). In any event, even expanding the motion for summary judgment, none of the arguments overcome the evidence that Mr. Letscher owed taxes, failed to pay them, and that the certificates of assessment were presumptively correct.

.

notice of deficiency well within the 60–day period under § 6861.

Sections 6212 and 6861 do not specify the form that the notice of deficiency must take. "But, because it is clear that the purpose of the notice 'is only to advise the person who is to pay the deficiency that the Commissioner means to assess him; anything that does this unequivocally is good enough.'" *Geiselman,* 961 F.2d at 4–5 (quoting *Olsen v. Helvering,* 88 F.2d 650, 651 (2d Cir.1937) (Hand, L., J.)); *Moretti,* 77 F.3d at 642 ("at a minimum, [the deficiency notice] must identify the taxpayer, indicate that the Commissioner has made a determination of deficiency, and specify the taxable year and amount of the deficiency.") (quoting *Andrew Crispo Gallery,* 16 F.3d at 1340); *Schiff v. United States,* 919 F.2d 830, 833 (2d Cir.1990) ("There is no requirement that the Secretary use a specific form to provide notice of a deficiency to a taxpayer."). The April 21, 1992 Peterson Letter identified the taxpayer and the tax, penalties, and interest assessed for each tax year at issue. Moreover, it informed Mr. Letscher when and where he may file a petition to contest the determination of liability. This information amply met the minimum requirements of § 6212.

Therefore, Mr. Letscher's contention that he did not receive the required notice of deficiency is without merit.

### (C)

Mr. Letscher also argues that the Form 1040 tax returns generated by the IRS pursuant to 26 U.S.C. § 6020(b)(1) are invalid because they were not properly "subscribed." (*See* 7/23/99 Letscher Supp. Decl. ¶ 6.) Section 6020(b) authorizes the IRS to prepare a substitute return prior to assessing deficient taxes. "It is clear, however, that when a taxpayer does not file a tax return, it is as if he filed a return showing a zero amount for purposes of assessing a deficiency. There is no requirement that the IRS complete a substitute return." *Schiff,* 919 F.2d at 832; *see*

*also Geiselman,* 961 F.2d at 5 (the fact that IRS-generated substitute tax returns are unsigned may deprive them of legal effect, "but that fact (if it is a fact) has no consequence" because the Internal Revenue Code procedures "do not require the Commissioner to prepare a return on a taxpayer's behalf before determining and issuing a notice of deficiency.").

In this case, the Government has adduced evidence in the form of Mr. Letscher's own admission that he stopped filing tax returns after 1980. (Tr. at 650–51.) Therefore, he could be treated as having filed tax returns showing zero tax payments during the period at issue. It is irrelevant that the tax returns prepared by the IRS in this case may not have been subscribed because that alone would not invalidate the assessments against Mr. Letscher.

### (D)

Mr. Letscher argues for the first time in his Supplemental Declaration filed in July, 1999 that the Notice of Federal Tax Lien Under Internal Revenue Laws (the "Tax Lien") issued against NYII, Joseph Letscher, sole proprietor, is invalid because it was not "certified." (*See* "Mot. to Expand Def.'s Cross Mot. for Summ. J. at 30–31; Tax Lien dated Apr. 19, 1992, attached as Ex. 8 to 7/23/99 Letscher Supp. Decl.") The argument is not a basis for denying summary judgment to the Government or granting it to Mr. Letscher because arguments raised in reply papers are not properly a basis for granting relief. *See, e.g., Abdel–Khalek v. Ernst & Young,* 1999 WL 190790 at * 6 (S.D.N.Y.1999); *Playboy Enterprises,* 960 F.Supp. at 720 n. 7. In any event, the Tax Lien was signed and dated by an IRS revenue officer. A certificate is not necessary for the validity of a Notice of Federal Tax Lien. *See* 26 U.S.C. § 6323(f); Rev. Rul. 71–466 (1971). The Notice submitted by Mr. Letscher also indicates that it was filed with the Register Office, New York

County, which is consistent with the evidence before the Court which indicates that it was filed in New York County and Westchester County. *See* 9/24/98 Kelly Decl. ¶ 5. Therefore, Mr. Letscher has failed to raise an issue of material fact that would preclude summary judgment.

### (E)

Mr. Letscher moves for summary judgment on the second and third causes of action—which seek to foreclose on the tax liens—on the ground that they are time barred under the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001 et seq. (the "Debt Collection Act"). He argues that the statute of limitations under the Debt Collection Act for fraudulent conveyance claims is six years and the Property at issue in this case was transferred in 1988, seven years prior to the commencement of this action in 1995.

■■■ The Debt Collection Act does not apply to Government actions to collect taxes. While the Debt Collection Act states that it provides the exclusive procedures for the Government to recover a debt, its provision of exclusivity is subject to the following express limitation:

> (b) Limitation.—To the extent that another Federal law specifies procedures for recovering on a claim or a judgment for a debt arising under such law, those procedures shall apply to such claim or judgment to the extent those procedures are inconsistent with this chapter.

7. Section 7401 provides: "No civil action for the collection or recovery of taxes, or of any fine, penalty, or forfeiture, shall be commenced unless the Secretary authorizes or sanctions the proceedings and the Attorney General or his delegate directs that the action be commenced." 26 U.S.C. § 7401.

8. Section 7403, which governs actions to enforce lien or to subject property to payment of tax, provides, in relevant part:
(a) Filing.—In any case where there has been a refusal or neglect to pay any tax, or to discharge any liability in respect thereof,

28 U.S.C. § 3001(b). Specifically, § 3003(b) of the Debt Collection Act provides:

> This chapter shall not be construed to curtail or limit the right of the United States under any other Federal law or any State law ... *to collect taxes* or to collect any other amount collectible in the same manner as a tax....

26 U.S.C. § 3003(b) (emphasis added).

In this case, the Government commenced this action pursuant to 26 U.S.C. §§ 7401 [7] and 7403,[8] not the Debt Collection Act. The applicable limitations period for tax collection actions under the Code is ten years after the assessment of the tax. *See* 26 U.S.C. § 6502; *see also United States v. Werner*, 857 F.Supp. 286, 289 (S.D.N.Y.1994). Subsection 6502(a)(1) provides that a timely assessed tax "may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun (1) within 10 years after the assessment of the tax ...." 26 U.S.C. § 6502(a)(1). Here, the Government first assessed Mr. Letscher for the taxes at issue on April 21, 1992 and the limitations period for this action does not expire until April 2002. Because this action was filed in 1995, it was timely commenced. Mr. Letscher's motion for summary judgment on the ground that this action is time-barred is denied.

### (F)

■■■ Mr. Letscher moves for summary judgment on the ground that this Court lacks subject matter jurisdiction because

> whether or not levy has been made, the Attorney General or his delegate, at the request of the Secretary, may direct a civil action to be filed in a district court of the United States to enforce the lien of the United States under this title with respect to such tax or liability or to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability....

26 U.S.C. § 7403.

this action was allegedly not properly authorized pursuant to 26 U.S.C. §§ 7401 and 7403. These provisions require authorization by both the Secretary of the Treasury and the Attorney General or their respective delegates. *See* 26 U.S.C. §§ 7401 and 7403; 26 C.F.R. §§ 301.7401–1(a) and 301.7403–1. In response, the Government has submitted in camera, under seal, the requisite letters of authorization. (*See* Letter from Patricia Beary dated Nov. 28, 1993 (authorization by the Secretary), attached to Letter from Kathleen Zebrowski dated July 7, 1999; Letter from D. Patrick Mullarkey dated June 30, 1994 (authorization by the Attorney General), attached to Letter from Kathleen Zebrowski dated July 12, 1999.) The Government has also submitted the relevant delegation authorizations. *See* Dep't of Justice Tax Division Directive No. 103, ¶ 1 (effective February 17, 1994) (authorizing chiefs of the Civil Trial Sections to approve and direct the institution of civil actions within their respective areas of responsibility), attached to (9/13/99 Zebrowski Supp. Decl.); Dep't of the Treasury General Counsel Order No. 4, ¶ 5 (effective October 15, 1987) (authorizing Chief Counsel for the Internal Revenue Service to prepare recommendations to the Department of Justice and to authorize or sanction the commencement of civil actions under the laws affecting the Internal Revenue Service) (attached to 9/16/99 Zebrowski Supp. Decl.). The Court has reviewed these documents and finds that an authorized delegate of the Secretary of the Treasury had duly authorized and requested the Attorney General to institute legal proceedings against Mr. Letscher and other parties as necessary to collect the outstanding federal tax assessments against Mr. Letscher. Moreover, the Government has also estab-

lished that a Chief of the Civil Trial Section of the Tax Division of the Department of Justice, as a duly designated delegate of the Attorney General, directed the United States Attorney for the Southern District of New York to file this action. Therefore, the requirements under §§ 7401 and 7403 for commencing this action have been fulfilled.[9]

Accordingly, Mr. Letscher's motion to dismiss the complaint for lack of subject matter jurisdiction is denied.

### (G)

Mr. Letscher moves for summary judgment dismissing the second and third causes of action against him on the ground that the complaint did not describe the Property at issue with sufficient particularity to give adequate legal notice. The defendant does not, however, explain in his papers what additional information is missing or how the precise street address failed to provide sufficient notice.

Under 28 U.S.C. § 1964, a party in a federal court action concerning real property must comply with the requirements of state law in order to give notice of the federal court action. *See* 28 U.S.C. § 1964; *see also Borison v. Harrison,* 226 B.R. 779, 788 n. 13 (S.D.N.Y.1998). New York courts have held that a street address provides sufficient notice of the property at issue. *See, e.g., Halali v. City of New York,* 623 N.Y.S.2d 618, 619, 213 A.D.2d 449, 450 (2d Dep't 1995).

In this case, the complaint described the Property as "113 Glover Avenue, Yonkers, New York." In addition to the description in the complaint, the Government also filed a Notice of Pendency

---

9. This argument of alleged lack of authorization was not raised in the initial moving papers by Mr. Letscher but in his reply papers. Nonetheless, the Court directed the Government to provide copies of the delegations. Mr. Letscher was provided with an opportunity to respond to the delegations submitted by the Government. He responded with a new Notice of Motion to dismiss the Complaint for lack of subject matter jurisdiction dated September 22, 1999. The motion is in fact simply a repetition of his prior argument that this action was not properly authorized. The argument is without substance and each of the motions to dismiss is denied.

pursuant to N.Y. C.P.L.R. 6501.[10] *See* Notice of Pendency dated Sept. 27, 1995, attached as Ex. A to 1/5/99 Zebrowski Supp. Decl.; *see generally 19 Court St. Assocs., LLC v. Resolution Trust Corp.,* 190 B.R. 983, 998 & n. 7 (S.D.N.Y.1996) (noting that the policy underlying the function of the notice of pendency is "to prevent the defeat or avoidance of a judgment obtained in an action affecting property by the alienation of that property during the pendency of the action."); *In re Anthony Sicari, Inc.,* 144 B.R. 656, 658 n. 1 (S.D.N.Y. 1992) ("a notice of pendency is a provisional remedy that may be filed in any action pending before a New York or federal court in which the judgment demanded would affect the title to ... real property."). The Notice of Pendency provided a two-page description of the Property, including its metes and bounds, and was filed with the County Clerk of Westchester County on October 24, 1995. (*See* Notice of Pendency dated Sept. 27, 1995 attached as Ex. A to 1/5/99 Zebrowski Suppl Decl.) Any defendant against whose name a notice of pendency has been indexed is deemed to have received constructive notice of the pending action. *See Sicari,* 144 B.R. at 658 n. 1 (noting that notice of pendency serves as constructive notice). In this case, the Notice of Pendency was indexed against all of the defendants, including Mr. Letscher. Accordingly, the Government has given a sufficient legal description of the Property at issue and Mr. Letscher's motion for summary judgment is denied.

### (H)

■ Mr. Letscher contends that the Court lacks in rem jurisdiction to affect the Property because the federal government has no authority over lands located within a state. This argument is frivolous. Congress expressly created federal tax liens by statute. *See United States v. Brosnan,* 363 U.S. 237, 240 & n. 3, 80 S.Ct.

10. By Order of this Court, the Notice of Pendency was extended for three years, until October 24, 2001. (*See* Order dated July 8, 1999.)

1108, 4 L.Ed.2d 1192 (1960) (noting that detailed statutory provisions govern the creation, continuance, validity and release of federal tax liens); *see also* 26 U.S.C. §§ 6321, 6323 & 6325. Federal courts have repeatedly exercised jurisdiction in cases seeking to enforce tax liens. *See, e.g., Geiselman,* 961 F.2d at 7 (affirming validity of federal tax lien on real property owned by pro se litigants); *United States v. Alfano,* 34 F.Supp.2d 827, 849 (E.D.N.Y. 1999) (granting summary judgment in favor of government's motion to foreclose on federal tax liens on real property); *United States v. Wolofsky,* No. CV–89–2824, 1993 WL 36135 at *1 (E.D.N.Y. Feb.1, 1993) (finding the government was entitled to foreclose federal tax liens on real property).

Therefore, Mr. Letscher's motion for summary judgment based on an alleged lack of jurisdiction over the Property is denied.

### (I)

Mr. Letscher next argues that he lacked the capacity to be sued because he was incarcerated at the time the complaint was filed and that service upon him was improper. These arguments were previously rejected by this Court. (*See* Memorandum Endorsement dated Aug. 9, 1995.) This Court found that Mr. Letscher had purposefully sought to avoid service of process while in prison, and held that the prison guard's order to Mr. Letscher to accept service constituted valid service. *See id.* at 2–4. To the extent the plaintiff's motion is a motion for reconsideration, it is untimely. In any event, the plaintiff has pointed to no new facts or controlling law that the Court overlooked in the prior opinion. Therefore, the motion for summary judgment on the basis of improper service is denied.

## IV.

### (A)

■ Mr. Letscher filed objections to Magistrate Judge Peck's denial of his motion to strike the original affidavit of Assistant United States Attorney Kathleen Zebrowski, dated September 25, 1998. (*See* Order of Magistrate Judge Peck dated Oct. 27, 1998.) The objections are overruled. Mr. Letscher argued that Ms. Zebrowski is not competent to testify in this matter pursuant to Fed.R.Civ.P. 56(e) because she lacks personal knowledge of the facts in this case. He also contended that it was unethical for a lawyer to act as both an advocate and a witness in a case. To the extent that Mr. Letscher's objections are a procedural motion, Magistrate Judge Peck's ruling was not clearly erroneous or contrary to law. In any event, the ruling was entirely correct even on a *de novo* review. Magistrate Judge Peck correctly found that Ms. Zebrowski's affidavit was submitted to put certain documents before the Court and that it is usual for counsel to put documents before the Court on summary judgment motions as enclosures to counsel's affidavit. *See id.* Moreover, Ms. Zebrowski set forth the procedural history of this case in her affidavit. That also is a common and proper use of an attorney affidavit. Therefore, Mr. Letscher's objections to the Magistrate Judge's ruling are **overruled.**

Mr. Letscher also moves to strike subsequent affidavits submitted by Ms. Zebrowski. The motion is **denied** for the same reasons as explained above.

### (B)

Mr. Letscher moves to strike the document entitled "IMF MCC Transcript—Complete," attached to the September 24, 1998 declaration of IRS Officer Michael Kelly. The motion is denied. The document is admissible. In any event, however, since the document is not required for the Court's decision, the motion is moot.

Mr. Letscher's motion for production of IRS Form 23–C is denied as moot.

## V.

The Court has already granted default judgments against the State Tax Commission, the Bank, and Francis and Mary Haviland by Order dated July 8, 1999.

The Government has informed the Court that the action against Irene Letscher Vingo has been settled and that a stipulation will be submitted. Therefore, the Government's motion for a default judgment against Ms. Vingo is denied as moot without prejudice to reinstatement if the stipulation of settlement is not submitted within five (5) days of the date of this Opinion and Order.

## VI.

The Government moves to amend the caption of the complaint to correct the names of John Doe No. 1 and Jane Doe No. 1 by substituting as named defendants Francis Haviland and Mary Haviland, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. It also moves to dismiss John Doe Nos. 2–5 and Jane Doe Nos. 2–5 from this action. These motions are unopposed and are therefore **granted.**

## CONCLUSION

For the reasons explained above, the Government's motion for summary judgment is **granted.** The Government's motion for a default judgment against Irene Letscher Vingo is **denied as moot** without prejudice to reinstatement if the stipulation of settlement is not submitted within five (5) days of the date of this Opinion and Order. The Government's motion to amend the caption and to dismiss John Doe Nos. 2–5 and Jane Doe Nos. 2–5 from this action is **granted.** The Court has considered all of the extensive arguments and applications of defendant Joseph Letscher and to the extent not expressly discussed above, they are without merit and his cross-motion for summary judgment and

other motions are **denied in their entirety.** Defendant Joseph Letscher's objections to the Magistrate Judge's Order dated October 27, 1998 are **overruled.** The Government is directed to submit a proposed judgment within five (5) days with notice to all parties. Any proposed counter-judgment may be submitted five (5) days thereafter.

**SO ORDERED.**

### ORDER

The defendant Joseph Letscher has moved for reconsideration of this Court's Order dated September 27, 1999 which, among other rulings, granted the Government's motion for summary judgment and denied the defendant's cross-motion for summary judgment. *See United States v. Letscher,* 83 F.Supp.2d 367 (S.D.N.Y.1999). The defendant also filed objections to the Government's proposed judgment.

 In deciding a motion for reconsideration pursuant to Local Rule 6.3, the Court applies the same standards as those governing former Local Rule 3(j). *See Fesce v. Guardsman Elevator Co.,* 96 Civ. 6793, 1998 WL 262587, at *1 (S.D.N.Y. May 21, 1998), *aff'd,* 173 F.3d 844 (2d Cir.1999); *Mullen v. Bevona,* 95 Civ. 5838, 1998 WL 148426, at *1 n. 1 (S.D.N.Y. Mar.27, 1998); *Itar–Tass Russian News Agency v. Russian Kurier, Inc.,* No. 95 Civ. 2144, 1999 WL 165706, at *1 (S.D.N.Y. March 25, 1999). The moving party is required to demonstrate that the Court overlooked the controlling decisions or factual matters that were put before the Court in the underlying motion. *See Walsh v. McGee,* 918 F.Supp. 107, 110 (S.D.N.Y.1996); *see also* Local Rule 6.3; *In re Houbigant,* 914 F.Supp. 997, 1001 (S.D.N.Y.1996); *Bank Leumi Trust Co. of New York v. Istim, Inc.,* 902 F.Supp. 46, 48 (S.D.N.Y.1995). This rule is "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." *Walsh,* 918 F.Supp. at 110; *see also United States v. Mason Tenders Dist. Council of Greater New York,* 909 F.Supp. 882, 889 (S.D.N.Y.1995).

None of the arguments raised by the defendant is a basis for modifying the Court's September 27, 1999 Order. The defendant primarily repeats the same arguments already considered and rejected by this Court. In the prior opinion, the Court made it clear that the Court had considered all of the extensive arguments raised by the defendant and found them to be without merit. Reiterating the same arguments is not a basis for reconsideration.

The defendant does rely on *SEC v. Monarch Funding Corp.,* 192 F.3d 295 (2d Cir.1999), which was issued shortly before this Court's opinion and which was not cited. However, that opinion does not suggest that summary judgment against the defendant was inappropriate in this case. In *Monarch Funding,* the Court of Appeals determined that the application of collateral estoppel to prevent a defendant from relitigating his liability for securities fraud, based on prior sentencing findings, was improper in that case although the Court of Appeals declined to adopt a per se rule that would always bar the collateral estoppel effect of such findings. *See Monarch Funding,* 192 F.3d at 306. In this case, the Government did not seek to invoke collateral estoppel to prevent the defendant from presenting any evidence or litigating any issue. And this Court decided the motion for summary judgment not on the basis of any preclusive effect of sentencing findings but only after considering all of the documents and other evidence including the decision by the Court of Appeals in the defendant's criminal case. All of that evidence, which the defendant was free to dispute, established that there was no genuine issue of material fact and that the Government was entitled to judgment as a matter of law. Indeed, summary judgment is fully justified for all of the reasons explained in this Court's September 27, 1999 Order, even without any reference to the findings by the sentencing judge. Therefore, having reconsidered this Court's September 27, 1999

opinion in light of *Monarch Funding*, this Court continues to find that the Government's motion for summary judgment was properly granted and the defendant's cross-motion was properly denied.

The remainder of the defendant's motion is a repetition of numerous arguments that the Court has already considered and rejected. In the September 27 decision, the Court made it clear that the Court had considered all of the defendant's arguments and found them to be without merit. There is nothing in the motion for reargument that suggests any facts or legal authorities that the Court overlooked or that warrant a different result.

The defendant argues that the Court of Appeals was in error when it found that the defendant did not dispute that he had earned income during the years charged in the indictment, and the defendant asserts that this Court was in error in relying on the Court of Appeals decision. The defendant points out that he filed motions disputing that he had income, and he argues that income is limited to corporate profit, he is not a corporation, and therefore he had no income. *See* Motion for Reconsideration, at 24. The Court of Appeals was not required to credit frivolous arguments and the record makes clear that the defendant did have income and failed to report it.

The defendant argues again that the Secretary of the Treasury did not authorize this action. But the Court correctly found that the Secretary had authorized this action. *See Letscher*, 1999 WL 1458159, at *11. The defendant asserts that General Counsel Order No. 4 (effective October 15, 1987) was superseded on November 25, 1994, but this action was authorized by letter dated November 28, 1993, before the Order was superseded. While the defendant asserts that this Order only provides authority for the Chief Counsel to authorize commencement of litigation, the defendant concedes that General Counsel Order No. 4 itself authorizes redelegation of any of the authority in the Order to any officer or employee in the Office of the Chief Counsel. *See* General Counsel Order No. 4, at ¶ 16. The full title of the Manhattan District Counsel is Office of the Chief Counsel, Internal Revenue Service, District Counsel, Manhattan District. *See* Letter from Kathleen Zebrowski dated July 16, 1999, at n. 3. *See also Internal Revenue Manual*, Part 34, § 34(730) (Suit Letters). The Court of Appeals for the Ninth Circuit rejected an argument similar to the defendant's, particularly in the absence of "any evidence that would counter the normal presumption of regularity that attaches to the actions of public officers." *Palmer v. Internal Revenue Service*, 116 F.3d 1309, 1311 (9th Cir.1997). The defendant's challenge to the institution of this action is, as the Court already found, without merit.

The Court also considered and rejected the defendant's challenges to the Certificates of Assessments and Payments in this case. *See Letscher*, 1999 WL 1458159, at *8. While the defendant contends that his tax was assessed on "excise income," there is no support for that proposition. The Government has submitted the Certificates of Assessments as well as the Summary Record of Assessments all of which indicate that the amounts were being assessed for individual income taxes. There is no genuine issue of material fact that the defendant had earned income, failed to pay taxes on that income, and that the assessed taxes were presumptively correct.

The defendant also alleges that the Government could not foreclose the tax lien on the property because to do so would violate the Uniform Fraudulent Conveyance Act. However, this Court so ordered a stipulation dated October 7, 1999 among the Government, the defendant and Irene Letscher Vingo that dealt with the property. At this point the Government seeks only a personal judgment against Mr. Letscher. The argument under the Uniform Fraudulent Conveyance Act is therefore moot.

Finally, the Government submitted a proposed judgment which included interest to October 5, 1999. At the defendant's

request, the Court ordered the Government to provide detailed calculations with respect to the amount of the proposed judgment, including the interest computation and the statutory authority for that interest. After the Government did so, the defendant did not explain why any of the calculations were not justified. Having reviewed the submissions, it is clear that the Government is entitled to a judgment against Mr. Letscher in the amount of $561,851.53. The Government has not sought to add interest from October 5, 1999 to the date the judgment is entered.

## CONCLUSION

The defendant's motion for reconsideration is denied. The Court has considered all of the numerous arguments raised by the defendant and finds them to be without merit. The Government is entitled to have judgment entered against the defendant Joseph Letscher in the amount of $561,-851.53.

**SO ORDERED.**